UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 19-11372-RGS

HENRY LIMA

v.

MIDDLESEX SHERIFF'S OFFICE, et al.

MEMORANDUM AND ORDER ON
DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

February 19, 2020

STEARNS, D.J.

Plaintiff Henry Lima, a former employee of the Middlesex House of Corrections (MHOC) and representing himself *pro se*, is suing the Middlesex Sheriff's Office (MSO) and several individuals under the Americans with Disabilities Act, 42 U.S.C. § 12101 (ADA), for discrimination, failure to accommodate, and retaliation.

## BACKGROUND

The essential facts, viewed in the light most favorable to plaintiff as the nonmoving party, are as follows. Lima suffers from "[o]ccupational asthma, severe allergic reactions and multiple other physical ailments which resulted in having caused [him] great discomfort, loss of time at work, loss of wages and benefits, [and] loss of employment." Compl. ¶ 7. Lima contends that

these impairments were caused by the MSO's "improper chemical use of highly toxic chemicals within the . . . MHOC," where he worked.  *Id.*  While he was an MSO employee, Lima informed the MSO "of a public health issue within the [MHOC]", *id.* ¶ 10, for which he "request[ed] . . . Material Safety Data Sheets" from the MSO.  *Id.* ¶ 11.  Separately, a physician who treated Lima informed both the MSO and an outside occupational health agency about "a public health issue within the [MHOC]."  *Id.* ¶¶ 12-14.  Lima "was interviewed by [outside public health agencies] and directed [these] outside public health agencies [to] a public health issue within the [MHOC]."  *Id.* ¶ 15.  Subsequently, according to Lima's Complaint, the "Department of Labor Standards investigated the conditions of [MHOC], and found [Lima's and Lima's physician's claims] to be true."  *Id.* ¶ 15.

Lima alleges that he requested a reasonable accommodation from the MSO for a "disability [he] suffered during a work place injury," *id.* ¶ 8; this disability was impliedly his occupational asthma, which resulted from exposure to toxic chemicals.  *See* Compl. ¶¶ 7-8; Dkt # 31 at 11 (referencing occupational asthma as alleged disability).  The MSO, however, "failed to reasonably accommodate [him]."  Compl. ¶ 9.  At some point, Lima "fil[ed] a Workman's Compensation claim."  *Id.* ¶ 19.  The MSO allegedly "wrongfully terminated [Lima], because of [his] disability, because [he] engaged in

protected acts, and because Sheriff Peter Koutoujian was involved in a Conflict of Interest situation which ultimately caused [his] disability." *Id.* ¶ 26.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two basic principles guide the court's analysis. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### INDIVIDUAL LIABILITY UNDER THE ADA

As a preliminary matter, the court notes that only employers can be held liable under the ADA. *See Roman-Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 52 (1st Cir. 2011), quoting *Fantini v. Salem State Coll.*, 557 F.3d 22, 31 (1st Cir. 2009) ("Title I of the ADA, like Title VII of the Civil Rights Act, 'addresses the conduct of employers only and does not impose

liability on co-workers.'"); *Miranda v. Deloitte LLP*, 979 F. Supp. 2d 191, 193-194 (D.P.R. 2013) (discussing *Roman-Oliveras*, 655 F.3d at 51-52). Accordingly, the court will dismiss the claims against individual defendants Peter J. Koutoujian, Amoroso Cefalo, Thomas J. Howard, James Spencer, LaDonna Hatton, and Heather Hall.

## TIMELINESS OF LIMA'S ADA CLAIMS

The court turns next to the MSO's contention that Lima's ADA claims are untimely. *See* Dkt # 22 at 6-7. An ADA plaintiff must comply with the administrative procedures specified in Title VII, 42 U.S.C. § 2000e, before commencing suit under Title I of the ADA. *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 278 (1st Cir. 1999). An ADA plaintiff who chooses to institute proceedings with a state or local agency must file charges "within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier . . . ." 42 U.S.C. § 2000e-5(e)(1). *See also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982) ("[T]his time period for filing a charge is subject to equitable doctrines such as tolling or estoppel.").

In his Complaint, Lima alleges broadly that the MSO violated the ADA

"between the dates of 6/14/15 through March 21, 2019." Compl. ¶ 6. Given

the requirements of 42 U.S.C. § 2000e-5(e)(1) outlined above, this range of

years alone fails to provide the court with the details necessary to determine

whether Lima filed a timely charge. Defendants, however, have provided the

court with copies of public records including the complaint that Lima filed

before the Massachusetts Commission on Discrimination (MCAD

complaint).[1]

Lima's MCAD complaint – alleging both discrimination based on

disability and retaliation – reflects a filing date of March 30, 2017. *See* Dkt

# 23-1 at 1. Accordingly, discrete acts that took place more than 300 days

prior to that date – in this case, June 3, 2016 – would fall outside the

---

[1] While a court generally may not consider documents outside a complaint in considering a motion to dismiss, there is "a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (internal quotation and citation omitted). "A plaintiff's administrative charge filed with the [Equal Employment Opportunity Commission] [(]EEOC[)] or [applicable state or local agency] 'may be considered either as a matter referenced in the complaint or as a public record subject to judicial notice.'" *Rodriguez v. Henry Schein, Inc.*, 813 F. Supp. 2d 257, 261-262 (D.P.R. 2011), quoting *Maldonado-Cordero v. AT & T,* 73 F. Supp. 2d 177, 185 (D.P.R. 1999). *See also Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) (court deciding a motion to dismiss may consider public records that would otherwise be subject to judicial notice under Federal Rule of Evidence 201).

limitations period.  *See also Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 31-32 (1st Cir. 2009), quoting *Powers v. Grinnell Corp.*, 915 F.2d 34, 38 (1st Cir. 1990) ("The scope of the civil complaint is accordingly limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge.").[2]

Lima's MCAD complaint alleges that the MSO denied his request for accommodation in a letter dated September 1, 2015.  Dkt # 23-1 ¶ 10.  The MCAD complaint also alleges that Lima's requests to "to meet to discuss [his] accommodation request" went unanswered.  *Id*. ¶ 10.  Nowhere does Lima allege that he "made a specific request for accommodation that was denied during the statutory period[]," namely after June 3, 2016.  *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 133 (1st Cir. 2009).  For purposes of this motion, because Lima cites to the MCAD Investigative Disposition in his response to defendants' Motion to Dismiss, *see* Dkt # 31 at 14, the court also notes the MCAD's disposition statement that "Complainant has not alleged that he sought to return to work, or requested any other accommodations that Respondent denied during the 300 day statutory filing period."  Dkt # 23-2

---

[2] The First Circuit recognizes an exception for retaliation that "is reasonably related to and grows out of the discrimination complained of to the agency."  *Clockedile v. New Hampshire Dep't of Corr.*, 245 F.3d 1, 6 (1st Cir. 2001).

at 9.  It is uncontested that the MSO terminated Lima's employment by letter dated October 20, 2016, effective October 27, 2016, Dkt # 23-1, ¶ 12 – within the 300-day limitations window.

**Continuing violation**

Lima counters that his claims are timely "[b]ecause this situation involves a continuing violation and the statute of limitations did not begin to run until the unlawful conduct ended, i.e. upon Complainant's termination October 27, 2016."  Dkt # 31 at 10.  While it is true that the First Circuit recognizes an "equitable exception to the limitations period called the continuing violation doctrine," *Megwinoff v. Banco Bilbao Vizcaya*, 233 F.3d 73, 74 (1st Cir. 2000), the Supreme Court has made clear that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred." *Morgan*, 536 U.S. at 113.

Termination of an individual's employment is unquestionably a "discrete act." *Id.* at 114.  An employer's denial of an employee's accommodation request similarly "is a discrete discriminatory act that, like a termination . . . does not require repeated conduct to establish an

actionable claim." *Tobin*, 553 F.3d at 130. Accordingly, "the continuing violation doctrine does not apply" to the denial of a disabled employees' request for accommodation. *Id.* Rather, "the timeliness of [an ADA plaintiff's] claim turns solely on whether an actionable denial of his request for accommodations occurred during the limitations periods." *Id.* at 131. As a result, "the denial of a disabled employee's request for accommodation starts the clock running on the day it occurs." *Id.* at 130.

The First Circuit has established that an ADA plaintiff who "renews his request for particular accommodations may bring suit based on a new 'discrete act' of discrimination if the employer again denies his request," *id.* at 131, provided that the ADA plaintiff "made a specific request for accommodation *that was denied during the statutory periods.*" *Id.* at 133 (emphasis added). In contrast, "[i]t is settled that an employee may not extend or circumvent the limitations period by requesting modification or reversal of an employer's prior action." *Id.* at 131, citing *Delaware State Coll. v. Ricks,* 449 U.S. 250, 261 n.15 (1980) ("Mere requests to reconsider . . . cannot extend the limitations periods applicable to the civil rights laws."). However, Lima does not allege that he made a specific request for accommodation which the MSO denied after June 3, 2016. "[D]iscrete acts that fall within the statutory time period do not make timely acts that fall

outside the time period." *Morgan*, 536 U.S. at 112, citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977).

**Equitable tolling**

Lima's Complaint alleges that defendants "misle[]d [Lima's] attorneys about addressing the resubmission of request for reasonable accommodation and Material Safety Data Sheets."[3]  Compl. ¶ 17.  However, the Complaint provides no further information on this point.  The First Circuit has established that time limitations relevant to the ADA's charge-filing requirement may be subject to equitable tolling in "peculiar circumstances . . . [such as when] a claimant misses a filing deadline because of circumstances effectively beyond her control (such as when her employer actively misleads her, and she relies on that misconduct to her detriment)." *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 279 (1st Cir. 1999), citing *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 185 (1st Cir. 1989); *Earnhardt v. Commonwealth of Puerto Rico*, 691 F.2d 69, 71 (1st Cir. 1982). *See also Montalvo-Figueroa v. DNA Auto Corp.*, 2019 WL 5704798, at *7 (D.P.R. Nov. 5, 2019), quoting *Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 119 (1st Cir. 2009) ("In order for equitable tolling to

---

[3] It is unclear the extent to which Lima was represented by counsel during his administrative process before the MCAD.

apply, the plaintiff must show that circumstances beyond his or her control precluded a timely filing.").  The First Circuit has declined to apply equitable tolling where an appellant "laid claim to equitable tolling but . . . advanced no developed argumentation in support of [that] claim . . . [nor] allege[d] any facts that remotely suggest a plausible basis for such relief."  *Bonilla*, 194 F.3d at 279.  Such is the case here.[4]

**Claim for failure to accommodate alone deemed untimely**

Accordingly, absent sufficient factual allegations to support an argument for equitable tolling, the court considers claims based upon the MSO's denial of Lima's accommodation request to be untimely.  As a result, the court will dismiss Lima's claim for failure to accommodate.  *See Rocafort v. IBM Corp.*, 334 F.3d 115, 119 (1st Cir. 2003) (To prevail on a failure to accommodate claim, a plaintiff must show "(1) he is disabled within the meaning of the ADA, (2) he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [an employer],

---

[4] The court lacks information about when Lima may have received a right-to-sue letter from the EEOC.  As defendants have not argued that Lima failed to comply with the right-to-sue-letter requirements of 42 U.S.C. § 2000e-5(f)(1), the court deems waived any issue regarding this requirement.  *See Martinez-Rivera v. Commonwealth of Puerto Rico*, 812 F.3d 69, 78 (1st Cir. 2016) (internal quotations and citation omitted) ("[W]hile the right-to-sue-letter requirement remains, it is simply a precondition to bringing suit, not a jurisdictional bar, and thus can be waived by the parties or the court.").

despite knowing of [the plaintiff's] disability, did not reasonably accommodate it.").

Nonetheless, as noted above, Lima's termination in October of 2016 does fall within the 300-day statutory limitations window. "The existence of past acts and the employee's prior knowledge of their occurrence . . . does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113. Because Lima's claims for disability discrimination and retaliation rely on his termination in October of 2016, within the limitations window, the court will proceed to address each.

**DISABILITY DISCRIMINATION**

**Disability within the meaning of the ADA**

"To state a claim of disability discrimination under Title I of the ADA, [a plaintiff] need[s] to allege facts showing that (1) he was disabled within the meaning of the Act; (2) he could perform the essential functions of his job, with or without reasonable accommodation, and (3) the employer took adverse action against him, in whole or in part, because of his disability." *Roman-Oliveras*, 655 F.3d at 48.

To begin with, the MSO contends that Lima has not pled facts sufficient to support an inference that he was disabled within the meaning of the ADA. "[A] plaintiff claiming disability discrimination cannot satisfy the first element of his prima facie case unless he can show that he has a disability within the meaning of the ADA." *Mancini v. City of Providence by & through Lombardi*, 909 F.3d 32, 39 (1st Cir. 2018). "An individual is disabled for purposes of the ADA if he (1) has a physical or mental impairment *that substantially limits one or more major life activities*; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Roman-Oliveras*, 655 F.3d at 48 (citations omitted, emphasis added). In the ADA Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325, 122 Stat. 3553, "Congress expressly rejected the strict standards imposed on the definition of 'disability' by the Supreme Court and the EEOC." *Mancini*, 909 F.3d at 40, citing Pub. L. No. 110-325, 122 Stat. 3553, § 2(b)(2-4). "As enacted, the ADAAA specifically admonished that '[t]he definition of disability . . . shall be construed in favor of broad coverage of individuals . . ., to the maximum extent permitted by the terms of this chapter.'" *Id.*, quoting 42 U.S.C. § 12102(4)(A). "The EEOC followed suit, promulgating new regulations to like effect." *Id.*, citing 29 C.F.R. § 630.2.

Lima asserts that he is disabled within the meaning of the ADA because

he suffers from occupational asthma.  *See* Comp. ¶¶ 8, 25.  *See also* Dkt # 31 at 14 (arguing that "[t]he evidence establishes that Complainant is a handicapped individual within the meaning of the statute due to his occupational asthma").  At the outset, Lima's assertion that he suffers from occupational asthma suffices to allege an impairment.  *See* Dkt # 23-1, ¶ 1 (explaining that "symptoms when exposed to some cleaning chemicals include asthma attacks, swelling of my tongue and ears, slurred speech, skin irritations, and stomach issues"); *Mancini*, 909 F.3d at 40, quoting 29 C.F.R. § 1630.2(h) ("Applicable regulations define physical impairment as including '[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems.'"); *id.* at 41 ("[I]t is clear that injuries can comprise impairments, even when their impact is only temporary.").

In addition, Lima adequately "identif[ies] the major life activity that is affected."  *Id.* at 42, citing *Ramos-Echevarria v. Pichis, Inc.*, 659 F.3d 182, 188 (1st Cir. 2011).  Lima alleges that his impairments caused "loss of time at work," Compl. ¶ 7, and the First Circuit has concluded that "[w]orking can be considered a major life activity."  *Ramos-Echevarria*, 659 F.3d at 188.  In addition, while Lima does not allege expressly that his occupational asthma substantially limits his ability to breathe, he suggests as much.  *See Erickson*

*v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (quotations and citations omitted).  Unobstructed breathing clearly qualifies as a major life activity.  *See Ramos-Echevarria*, 659 F.3d at 187, quoting 29 C.F.R. § 1630.2(i) (1991) ("Major life activities are basic activities of daily life that an average person in the general population can perform with little or no difficulty—'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'").

Finally, Lima must allege that his impairment "'substantially limits' the identified major life activity."  *Id.*, quoting *Carroll v. Xerox Corp.*, 294 F.3d 231, 238 (1st Cir. 2002).  "[A] determination as to whether this 'substantially limits' requirement has been satisfied calls for a comparison between the plaintiff's limitations and those of the majority of people in the general population."  *Mancini*, 909 F.3d at 42.  Here, Lima's Complaint before this court does not allege sufficient facts to illustrate how Lima's occupational asthma substantially limits his ability to work or breathe.

Lima's MCAD complaint provides more information: it alleges that after a bad "episode of asthma attacks and symptoms due to chemical exposure at Billerica House of Corrections" in June of 2015, Lima "was out

of work for a few weeks." Dkt # 23-1, ¶ 5.  The MCAD complaint asserts that Lima did not experience symptoms when working outside the building, but that "when [he] was assigned to work mostly inside the building, [his] symptoms gradually came back." *Id.* ¶ 4.  It states that in July of 2015, Lima suffered an asthma attack after being "inside the [House of Corrections] building for about ten minutes." *Id.* ¶ 7.[5]

Given other courts' conclusion that "[w]hether a plaintiff with asthma is substantially limited in his ability to work or to breathe is a fact specific question," *Murtha v. New York State Gaming Comm'n*, 2019 WL 4450687, at *10 (S.D.N.Y. Sept. 17, 2019), citing *Burke v. Niagara Mohawk Power Corp.*, 142 Fed. App'x 527, 529 (2d Cir. 2005) (noting that "asthma does not invariably impair a major life activity"), the allegations contained in Lima's MCAD complaint would suffice to survive a motion to dismiss at this early

_____

[5] At least one other court recently has declined to find that a plaintiff's occupational asthma substantially limits the major life activity of breathing, where the plaintiff's "occupational asthma require[d] her only to avoid her place of employment and, by her own admission, its symptoms rapidly abate as she spends time outside of the main hospital facility." *Adkins v. Cabell Huntington Hosp., Inc.*, 2011 WL 4458759, at *3 (S.D.W. Va. Sept. 23, 2011). *See also Mulloy v. Acushnet Co.*, 460 F.3d 141, 147, 156 (1st Cir. 2006) (declining to decide whether a plaintiff with "occupational asthma [that] substantially limit[ed] his ability to breathe and work" had a disability within the meaning of the ADA while finding plaintiff "was not a qualified individual with a disability under the ADA . . . because he could not perform the essential functions of his job with or without reasonable accommodation").

stage of proceedings.

**Performance of essential functions**

Lima must then allege that "he could perform the essential functions of his job, with or without reasonable accommodation." *Roman-Oliveras*, 655 F.3d at 48. "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires. The term 'essential functions' does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). An essential function "does not include 'marginal functions of the position,' but at the same time it 'may be more encompassing than such core job requirements as an employee's technical skills and experience even including such individual or idiosyncratic characteristics as scheduling flexibility.'" *Ward v. Massachusetts Health Research Inst., Inc.*, 209 F.3d 29, 34 (1st Cir. 2000), quoting *Laurin v. Providence Hosp.*, 150 F.3d 52, 59 n.6 (1st Cir. 1998).

"[T]he plaintiff's burden under the ADA is 'to show not only that [a] proposed accommodation would enable [him or] her to perform the essential functions of [his or] her job, but also that, at least on the face of things, it is feasible for the employer under the circumstances." *Tobin*, 553 F.3d at 136, quoting *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 259 (1st Cir. 2001). Determining whether job duties constitute essential functions

ultimately is "fact-intensive."  *Ward*, 209 F.3d at 34.

Here, Lima's Complaint does not present any factual allegations regarding the nature of Lima's job, his proposed accommodations, or how such accommodations could be feasibly implemented.  Accordingly, the Complaint cannot support a reasonable inference that Lima could perform the fundamental job duties of his position.  Lima's MCAD complaint, however, alleges in slightly greater detail that Lima "asked that [he] be assigned to work outside the building due to [his] disability," Dkt # 23-1, ¶ 6; it also states that "[t]here are many jobs that could be performed outside such as cruiser, patrol, visits, etc., some of which [Lima has]  routinely performed before."  *Id*. ¶ 10.  These statements alone, however, are insufficient to suggest a plausible entitlement to relief.[6]

**Adverse action because of disability**

Finally, Lima must plead facts capable of giving rise to a reasonable inference that the MSO terminated his employment "in whole or in part, because of his disability."  *Roman-Oliveras*, 655 F.3d at 48.  Here, while the

---

[6] In his Response to defendants' Motion to Dismiss, Lima avers that "the essential functions of [his] position do not require assignment indoors or exposure to quaternary ammonium compounds."  Dkt # 31 at 11. However, this fact is not alleged in the Complaint or other document upon which the court may rely in ruling on a motion to dismiss.

Complaint asserts that Lima engaged in several actions which allegedly prompted retaliation from the MSO – and while it alleges in conclusory fashion that the MSO "discriminated against [Lima] because of [his] disability," Compl. ¶ 25 – the Complaint does not present factual allegations sufficient to support a reasonable inference that the MSO terminated Lima's employment because of his occupational asthma specifically. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration in original), quoting Fed. R. Civ. P. 8(a)(2).[7]

**RETALIATION**

Finally, Lima alleges retaliation – an independent cause of action under the ADA. *See* 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a

---

[7] In his Response to defendants' Motion to Dismiss, Lima argues more explicitly that "the circumstances surrounding [his] termination, including the proximity in time between the removal of the chemical products that resulted from his reasonable accommodation request and the notice of his termination strongly indicates that the termination was based on [his] medical condition." Dkt # 31 at 12. However, facts underpinning this argument are not alleged in the Complaint or other document upon which the court may rely in ruling on a motion to dismiss.

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."). "A plaintiff need not succeed on a discrimination claim to assert a claim for retaliation." *Wright v. CompUSA, Inc.*, 352 F.3d 472, 477 (1st Cir. 2003).

Title VII retaliation claims proceed under the *McDonnell Douglas* framework. *Dixon v. Int'l Bhd. of Police Officers*, 504 F.3d 74, 81 n.4 (1st Cir. 2007). *See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "To establish a prima facie claim of retaliation, [a plaintiff] must show 'that he was engaged in protected conduct, that he was discharged, and that there was a causal connection between the discharge and the conduct.'" *Wright*, 352 F.3d at 478, quoting *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997). "Once a plaintiff makes out a prima facie case of retaliation, 'the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment decision.'" *Carreras v. Sajo, Garcia & Partners*, 596 F.3d 25, 36 (1st Cir. 2010), quoting *Wright,* 352 F.3d at 478 (citation and quotation marks omitted). "If the employer produces a legitimate reason for its decision, 'the burden . . . shifts back to the plaintiff to show that the motive was discriminatory [or retaliatory].'" *Carreras*, 596 F.3d at 36 (alteration in original), quoting *Sabinson v. Trs. of Dartmouth Coll.*, 542 F.3d 1, 4 (1st Cir. 2008). "Thus, the plaintiff bears the ultimate

burden to create a plausible inference that the employer had a retaliatory motive." *Carreras*, 596 F.3d at 36. In *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013), the Supreme Court held that Title VII requires a plaintiff to show that a protected activity was the but-for cause of the adverse action by the employer, specifically rejecting "the lessened causation test stated in § 2000e–2(m) [requiring a plaintiff to show only "that race, color, religion, sex, or national origin was a motivating factor]."

Here, Lima asserts that he took several actions in relation to the MSO's alleged misuse of "highly toxic chemicals," Compl. ¶ 7, including "requesting a reasonable accommodation for a disability [he] suffered." Compl. ¶ 8. Requesting an accommodation, even "without filing a formal charge or engaging in other specific behaviors listed in § 12203(a)," is a "protected activity" under the ADA. *Wright*, 352 F.3d at 477, 478. Lima also asserts that the MSO "wrongfully terminated" him based on his disability and his participation in protected activities. Compl. ¶ 26. It is undisputed that Lima's employment was in fact terminated. Termination is considered "a materially adverse action sufficient to dissuade a reasonable worker from making or supporting a charge of discrimination." *Mariani-Colon v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 224 (1st Cir. 2007).

As explained above, however, the Complaint is silent with respect to

dates on which Lima requested accommodation or otherwise "opposed any act or practice made unlawful" by the ADA within the meaning of 42 U.S.C. § 12203(a). Nor does the Complaint allege any specific facts that would permit the court to reasonably infer a causal connection between any protected activity and Lima's termination.

In his Response to defendants' Motion to Dismiss, Lima presents several dates not alleged in his Complaint. Lima's Complaint does allege that his doctor informed the Massachusetts Occupational Health agency of a public health issue within the MSO, and that this agency then "filed a complaint with another outside agency the Department of Labor Standards [DLS]." Compl. ¶ 14. Lima's Response asserts that the DLS conducted an investigation "[f]rom February through March 2016," and that the DLS "found the chemical products used by Respondent improper, and issued an order to Respondent recommending the removal of such chemical products." Dkt # 31 at 17. The Response also alleges that the MSO announced an intent to comply with DLS recommendations to "remove the improper chemical products" in September of 2016. Dkt # 31 at 18. Lima argues that "the proximity in time between the removal of the chemical products and the notice of his termination [in October of 2016] along with the fact that the removal of the chemical products was a direct result of Complainant's

reasonable accommodation request, strongly supports a causal link between the two." *Id.*

While an employee may rely on the timing of an employment action as evidence of causal connection between a protected activity and termination, "[t]he cases that accept mere temporal proximity between an employer's *knowledge of protected activity* and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (emphasis added), quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001). *See also Murray v. Warren Pumps, LLC*, 821 F.3d 77, 88 (1st Cir. 2016) ("[C]omplaints occurred six months to a year prior to his termination, which is too remote in time from the adverse employment action to establish a retaliation nexus . . . ."); *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 25 (1st Cir. 2004), quoting *Oliver v. Digital Equip. Corp.,* 846 F.2d 103, 110 (1st Cir. 1988) (alteration in original) (emphasis added) ("We have held that 'a showing of discharge *soon after the employee engages in an activity specifically protected by . . . Title VII . . .* is indirect proof of a causal connection between the firing and the activity because it is strongly suggestive of retaliation.'"). Lima has not alleged close temporal proximity between Lima's engagement

in statutorily protected activity and his termination.

## ORDER

For the forgoing reasons, the Motion to Dismiss is <u>ALLOWED</u> without prejudice. Lima, being *pro se*, is permitted an opportunity to file an Amended Complaint conforming to the requirements of Fed. R. Civ. P. 8. An Amended Complaint may incorporate relevant allegations from Lima's MCAD complaint and Response to defendants' Motion to Dismiss, and any other facts Lima chooses to include.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE